

# NUMBER 13-07-00449-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**CHARLES LYONS,**                                                                        **Appellant,**

**v.**

**STATE OFFICE OF RISK MANAGEMENT**                        **Appellee.**

### On appeal from the 136th District Court
### of Jefferson County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Benavides
### Memorandum Opinion by Chief Justice Valdez

Appellant, Charles Lyons, appeals a take-nothing judgment based on a jury verdict finding that he did not sustain a compensable injury. In three issues, Lyons contends that: (1) the evidence is legally insufficient to support the jury's verdict; (2) the trial court abused its discretion by refusing to submit Lyons's proposed definition of "injury"; and (3) the evidence is factually insufficient to support the verdict. We affirm.

# I. BACKGROUND

Lyons filed a claim with the Texas Department of Insurance, Division of Workers' Compensation (DWC), formerly known as the Texas Workers' Compensation Commission. At a contested hearing, the hearing officer determined that Lyons did not sustain a compensable injury and did not have resulting disability. Upon review of the determination, the DWC appeals panel determined that Lyons had sustained a compensable injury and disability. The State Office of Risk Management (SORM) brought a lawsuit challenging the appeals panel's finding. *See* TEX. LABOR CODE ANN. § 410.301(a) (Vernon 2006). At trial, SORM called Lyons and Dr. Donald Baxter. Lyons did not call any witnesses.

## A.    Lyons's Testimony

Lyons testified that on April 5, 2004, he sustained an injury to his left foot while working as a Texas Youth Commission dorm supervisor. In an effort to prepare the facility for an upcoming investigation, Lyons went into a supply closet to check the chemical log book. After checking the log, Lyons walked approximately three steps and pushed open the door to exit the closet. As he walked out of the closet, the door, equipped with a device that causes it to close automatically, began to close. As "the door was coming back . . . [Lyons] kind of grabbed the door and pivot[ed] to go around it." Lyons also described the event as follows: "It was coming back toward me; so, I had to extend my right hand and stop it before it came back and slammed on me and that's when I kind of stepped. I like [sic] outward and around it." As he moved, Lyons heard a "pop" in his left foot. Immediately in pain, Lyons thought that he must have been hit in the foot by something thrown by an inmate. Upon later examination, Lyons learned that nothing was thrown. Lyons did not fall, but leaned against a nearby bunk bed while a maintenance worker who allegedly heard the pop rushed to aid him.

2

The nurse at the facility's infirmary noticed swelling in Lyons's foot; later that day, Lyons went to the emergency room. Although Lyons could not remember what he told the emergency room doctors, he remembered that x-rays were taken, and a doctor told him that his left foot was fractured. The doctor put a soft splint cast on Lyons's left foot and told him to stay home from work for a week.

## B.    Lyons's Medical Records

The following is a summary of Lyons's medical records, and the information contained therein, admitted into evidence.

Prior to April 5, 2004, Lyons was treated for diabetes by Dr. W.O. Pickard. Dr. Pickard's records detail Lyons's diabetes treatment from February 2, 1996 to April 2, 2004, and do not mention neuropathic foot problems.

Lyons's April 5, 2004 emergency room record states that Lyons was "walking and felt a pop." The "chief complaint" section of the record states, "L foot pain onset today. Denies injury." Lyons's emergency room record does not mention neuropathic foot problems.

On April 12, 2004, Lyons visited chiropractor, Dr. Steven J. Enabnit. Medical records obtained from Dr. Enabnit mention a fracture of Lyons's fifth metatarsal, but do not mention neuropathy. Additionally, Dr. Forney Fleming, an orthopedic surgeon, treated Lyons's fracture from April 20, 2004 to August 3, 2004. Records from Lyons's April 20, 2004 visit refer to Lyons's injury as a "Jones fracture." On June 2, 2004, Dr. Fleming's records state: "Mr. Lyons was first evaluated by me on 4/20/04. He gave a history of a twisting injury to his foot accompanied by a pop and pain." Dr. Fleming's records do not mention neuropathy.

In November 2004, Lyons sustained a second injury to his left foot.[1] Dr. Charles Domingues, an orthopedic surgeon, provided care to Lyons after he sustained the second injury. On April 21, 2005, Dr. Domingues wrote: "Mr. Lyons is a gentleman who I am seeing and treating in my office for a neoropathic midfoot problem involving the left foot. This is related to his diabetes. This is all referred back to a specific worker's comp injury that occurred in the past."

## C.      Dr. Baxter's Testimony

Dr. Baxter, a board certified orthopedic surgeon, was called as SORM's medical expert. Dr. Baxter's qualifications as an expert in foot and ankle problems are uncontroverted. Dr. Baxter testified that he had reviewed Lyons's medical records, as well as the decisions from the initial DWC hearing and the DWC appeals panel.

Dr. Baxter testified that although Lyons's medical records describe the April 5, 2004 injury as a "Jones fracture," it is his opinion that the injury was really a stress fracture in the fifth metatarsal.[2] Dr. Baxter stated, that while it is common for people with diabetes and neuropathic feet to have stress fractures, they typically do not have Jones fractures.[3] Dr. Baxter stated that stress fractures "gradually progress and develop and then there is a certain point where the bone will give way."

Dr. Baxter based his opinion that Lyons's injury was a stress fracture on: (1)

---

[1] The November 2004 injury is not at issue in this case.

[2] Dr. Baxter described the difference between a "Jones fracture" and a stress fracture as follows:

Generally, a Jones fracture occurs when a basketball player comes down and turns the ankle and really fractures the bone[,] whereas the stress fracture occurs over time and usually [is] associated with other problems such as neuropathic feet, diabetes, and problems where you lose the sensation in the foot and have problems.

[3] Neuropathy is a "[p]rogressive degeneration of weight bearing joints, especially of the foot and ankle, associated with sensory loss due to nerve damage in those areas." IDA G. DOX ET AL., ATTORNEY'S ILLUSTRATED MEDICAL DICTIONARY N:99 (West Supp. July 2009).

medical records describing Lyons's movement to avoid the door as "walking"; (2) Lyons's history of diabetes; and (3) the difficulty of the fracture to heal. Dr. Baxter testified that it is "highly unlikely" that someone would sustain a stress fracture from a single incident. He testified that, according to the medical records, Lyons had a difficult time controlling his diabetes, and that it was "very likely" that the stress fracture was a result of Lyons's diabetic condition.

Dr. Baxter testified that in reading all the records, the description of the events surrounding the moment that Lyons heard a pop were described as "walking around a door" or "simply walking." Based on the foregoing, Dr. Baxter opined that Lyons's stress fracture was not related to his employment, but rather, was related to walking. Dr. Baxter testified that the motion involved in walking around a door does not involve a motion outside the realm of "just walking." Dr. Baxter stated that, "Where you get in[to] problems with injuries on-the-job is when there is an inversion injury where the ankle actually turns all the way over and you fracture bones, but simply walking and pivoting does not cause these fractures, particularly a Jones fracture."

Dr. Baxter further testified that another indication Lyons's fracture was a stress fracture rather than a Jones fracture was that Lyons's fracture did not heal easily and "[p]eople with neuropathic stress fractures have a very difficult time healing these, and they often result in another injury or fractures again."

On cross examination, Dr. Baxter acknowledged that the medical charts of the doctors who treated Lyons's left foot noted that Lyons had suffered a Jones fracture. He testified that although a Jones fracture and a stress fracture could look the same in an x-ray, he had not reviewed Lyons's x-ray. He further acknowledged that a medical history provided by Dr. Fleming stated that Lyons "gave a history of a twisting injury to his foot

5

accompanied by a pop and pain." Additionally, Dr. Baxter acknowledged that he found no indication that Lyons suffered from foot problems prior to April 5, 2004.

After weighing all the evidence, the jury found that Lyons did not sustain a compensable injury and did not reach the issue of disability because it was conditioned upon finding a compensable injury. Based on this verdict, the trial court rendered a judgment that reversed the DWC's finding. This appeal ensued.

## II. LEGAL SUFFICIENCY

In his first issue, Lyons contends that there is no evidence to support the jury's verdict that he did not suffer a compensable injury. Specifically, Lyons argues that SORM "based its case on its expert's testimony, which consisted of speculation and conjecture, piling inference upon inference."

### A.      Standard of Review and Applicable Law

As the party appealing the appeals panel's decision, SORM had the burden at trial to prove, by a preponderance of the evidence, that Lyons did not suffer a compensable injury. *See* TEX. LAB. CODE ANN. §§ 410.301(a), 410.303 (Vernon 2006); *Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 516 (Tex. 2007). When an appellant attacks the legal sufficiency of an adverse finding on an issue for which it did not have the burden of proof, the appellant must demonstrate that there is no evidence to support the adverse finding; therefore, Lyons must demonstrate that there is no evidence to support the jury's verdict that he did not suffer a compensable injury. *See State Office of Risk Mgmt. v. Larkins*, 258 S.W.3d 686, 689 (Tex. App.–Waco 2008, no pet.); *see also Ins. Network of Tex. v. Kloesel*, 266 S.W.3d 456, 469-70 (Tex. App.–Corpus Christi 2008, pet. filed). We will consider all evidence in the record in a light most favorable to the verdict, "crediting favorable evidence if a reasonable factfinder would and disregarding contrary evidence

6

unless a reasonable factfinder would not." *Larkins*, 258 S.W.3d at 689 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We will sustain a challenge to the legal sufficiency of the evidence only if: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810. No more than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (citation omitted).

The term "injury" is defined as "damage or harm to the physical structure of the body and a disease or infection naturally resulting from the damage or harm." TEX. LAB. CODE § 401.011(26) (Vernon Supp. 2008). A "compensable injury" is "an injury that arises out of and in the course and scope of employment . . . ." *Id.* § 401.011(10) (Vernon Supp. 2008). An injury resulting from an "activity that originates from the employment" and suffered "while the employee is actually engaged in furthering the employer's business" is considered an injury sustained in the course and scope of employment. *Tex. Workers' Comp. Ins. Fund v. Rodriguez*, 953 S.W.2d 765, 768 (Tex. App.–Corpus Christi 1997, writ denied).

Expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors. *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007). "[Expert] opinion testimony that is conclusory or speculative is not relevant evidence, because it does not tend to make the existence of a material fact 'more or less probable.'" *Coastal Transp. Co. v. Crown Cent. Petro. Corp.*, 136 S.W.3d 227, 232

7

(Tex. 2004); *see also* TEX. R. EVID. 401. "When the expert 'brings to court little more than his credentials and a subjective opinion,' this is not evidence that would support a judgment." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex. 1997) (citation omitted).

When the challenge to expert testimony requires the court to evaluate the underlying methodology, technique, or foundational data used by the expert in forming his or her opinion, a timely objection must be made in the trial court when the testimony is offered to preserve the issue for appellate review. *Coastal Transp. Co.*, 136 S.W.3d at 233; *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex. 1998); *Welch v. McLean*, 191 S.W.3d 147, 158 (Tex. App.–Fort Worth 2005, no pet.). However, no objection is required where there is no need to go beyond the face of the record. *Coastal Transp. Co.*, 136 S.W.3d at 233; *Welch*, 191 S.W.3d at 158.

## B.    Analysis

Lyons contends that SORM "based its case on [Dr. Baxter]'s testimony, which consisted of speculation and conjecture, piling inference upon inference." As such, Lyons further contends that "the vital fact at issue is whether Lyons sustained a compensable injury on April 5, 2004, or whether that injury was a stress fracture resulting from a neuropathic or Charcot condition that had developed prior to April 5, 2004." Lyons further contends that "[a] vital fact—such as whether Lyons suffered a compensable injury on April 5, 2004—cannot be established 'by piling inference upon inference' or by drawing unreasonable inferences from other facts and circumstances."[4]   No timely objection

---

[4] We note that "opinions of medical experts are an exception to the rule against inference stacking." *Welch v. McLean*, 191 S.W.3d 147, 161 n.7 (Tex. App.–Fort Worth 2005, no pet.) (citing *Tex. Empl. Ins. Ass'n v. Talmadge*, 256 S.W.2d 945, 951-52 (Tex. Civ. App.–Beaumont 1953, writ ref'd n.r.e); *S. Underwriters v. Hoopes*, 120 S.W.2d 924, 926 (Tex. Civ. App.–Galveston 1938, writ dism'd); *White v. Presnall*, No. 05-93-01029-CV, 1994 WL 416724, at *6 (Tex. App.–Dallas Aug. 10, 1994, writ denied)).

challenging the reliability of Dr. Baxter's opinion exists in the record; therefore, we review only the face of the record to test Dr. Baxter's reliability. *See Welch*, 191 S.W.3d at 158.

By categorizing the jury's finding that Lyons did not sustain a compensable injury on April 5, 2004 as a "vital fact," Lyons attempts to establish the existence of inferences that the jury was prohibited from making. The vital facts required to support the jury's finding are: (1) whether Lyons suffered an injury; and (2) whether such injury arose out of and in the course and scope of employment. *See* TEX. LAB. CODE § 401.011(10), (26). Neither party disputes that Lyons suffered an injury; therefore, we focus our analysis on whether sufficient evidence exists to prove the vital fact that Lyons's injury did not arise out of and in the course and scope of employment.

In order to meet its burden of proving that Lyons's fracture did not arise out of and in the course and scope of employment, SORM offered Dr. Baxter's expert medical opinion that Lyons's injury was a neuropathic stress fracture caused by pre-existing diabetes, and not arising out of Lyons's employment. The critical determination the jury had to make was whether Lyons's fracture was a Jones fracture or a neuropathic stress fracture. Dr. Baxter's testimony established that this distinction is pertinent because, while a Jones fracture can arise from a single occurrence in the course and scope of employment, it is "highly unlikely" that a neuropathic stress fracture will arise from a single occurrence. Dr. Baxter testified that a Jones fracture is caused by "[a] violent twisting or turning of the foot." Lyons's emergency room records stated that Lyons was "walking and felt a pop." Based on this description, Dr. Baxter concluded that Lyons's movement at the time of the incident did not "take it outside the realm of actually just walking." Dr. Baxter further testified that even if Lyons "pivoted," as he stated during his trial testimony, that action would amount to no more than walking. According to Dr. Baxter, "[w]here you get in problems with

9

injuries on-the-job is when there is an inversion injury where the ankle actually turns all the way over and you fracture bones; but simply walking and pivoting does not cause these fractures, particularly a Jones fracture." If the jury chose to believe that Lyons was merely walking when he sustained the injury, they could have inferred that Lyons suffered a stress fracture.

Moreover, Dr. Baxter has been a board certified orthopedic surgeon, specifically dealing with the foot and ankle, for more than thirty years. His qualifications as an expert are uncontested. In addition to basing his opinion on the emergency room records of Lyons's description of his movement around the closet door, Dr. Baxter also reviewed additional medical records to assess Lyons's health before and after April 5, 2004. Dr. Baxter testified that, since 1996, Lyons had experienced difficulty controlling his diabetes. Although medical records did not indicate that Lyons had neuropathic feet before April 5, 2004, Dr. Baxter testified that if an individual has difficulty controlling his diabetes, it is "highly likely" that he will have neuropathy in his feet. Dr. Baxter further testified that neuropathy causes a loss of sensation over time in the feet and that such a loss of sensation makes it difficult to diagnose a stress fracture. Dr. Baxter noted that "people with neuropathic stress fractures have a very difficult time healing." Medical records, as well as Lyons's testimony, indicated that he had experienced problems healing.

Although reasonable and fair-minded people could differ in their conclusions of whether Lyons suffered a compensable injury, the evidence presented falls within the zone of reasonable disagreement. *See City of Keller*, 168 S.W.3d at 822. We conclude that reasonable and fair-minded people could have found that Lyons did not suffer a compensable injury. Lyons's first issue is overruled.

**IV. FACTUAL SUFFICIENCY**

In his third issue, Lyons contends the jury's finding that he did not suffer a compensable injury is based on factually insufficient evidence, or is against the great weight and preponderance of the evidence.

## A.    Standard of Review

When the appellant challenges the factual sufficiency of an adverse finding on which the other party had the burden of proof, the appellant must demonstrate that there is insufficient evidence to support the adverse finding. *Tex. Prop. & Cas. Guar. Ass'n v. Nat'l Am. Ins. Co.*, 208 S.W.3d 523, 542 (Tex. App.–Austin 2006, pet. denied).   We will consider, weigh, and examine all of the evidence in the record, both in support of and contrary to the finding.  *Kloesel*, 266 S.W.3d at 470.  The district court's finding will be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust.  *Id.*

## B.    Analysis

Lyons's factual insufficiency arguments are analogous to those he advances to prove no evidence.  Lyons argues:  (1) "no evidence supports Dr. Baxter's theory of neuropathy or Charcot condition before the April 5, 2004, injury"; (2) "the evidence shows that there is still no indication of neuropathy or Charcot condition for several months after the April injury"; (3) "all the evidence shows that as of Lyons' [sic] second injury in November 2004, there is still no neuropathy or Charcot condition"; (4) "the evidence shows Charcot condition first appears in December 2004"; (5) "the evidence shows that neuropathy first appears in January 2005"; and (6) "Dr. Peter Foox, the Commission's designated doctor for an independent medical exam after the November injury, acknowledged that Lyons' [sic] April 2004 injury had been diagnosed as a 'Jones Fracture.'"  Lyons presented no witnesses at trial, and he bases his arguments on the

11

medical records introduced into evidence and relied on by Dr. Baxter.

Although Lyons devotes approximately twenty-four pages of his appellate brief to challenging the factual sufficiency of the evidence, he fails to cite any authority for his argument. *See* TEX. R. APP. P. 38.1(i) (providing that the brief must contain a clear and concise argument for the contentions made with appropriate citations to authorities). In any event, it is the sole prerogative of the jury to determine the weight and credibility of the evidence. *See Welch*, 191 S.W.3d at 160. Examining all of the evidence, both for and against the jury's verdict, we cannot say that the evidence supporting the jury's finding that Lyons did not suffer a compensable injury is so weak, or against the great weight and preponderance of the evidence, that the jury's verdict should be set aside. *Id.* at 160-61. Lyons's third issue is overruled.

### III. JURY CHARGE

In his second issue, Lyons contends that the trial court abused its discretion by denying his requested definition of "injury," which included aggravation of pre-existing conditions. Rule 278 of the Texas Rules of Civil Procedure states that "[f]ailure to submit a definition . . . shall not be deemed a ground for reversal of the judgment unless a substantially correct definition . . . has been requested in writing and tendered by the party complaining of the judgment." TEX. R. CIV. P. 278. Moreover, rule 273 states that "[a] request . . . for . . . definitions . . . shall be made separate and apart from . . . objections to the court's charge." TEX. R. CIV. P. 273.

At the charge conference, Lyons orally objected to the definition of injury and requested that the following be added to the definition: "Injury also includes an aggravation of a prior injury if the aggravation occurs in the course and scope of employment." However, Lyons made no written request for such a definition. Because Lyons did not

make a written request for submission of this definition, he has failed to preserve this issue.

*See Coley v. Baylor Univ.*, 147 S.W.3d 567, 570 n.3 (Tex. App.–Waco 2004), *rev'd on other grounds*, 221 S.W.3d 599 (Tex. 2007); *see also Gerdes v. Kennamer*, 155 S.W.3d 523, 535 (Tex. App. Corpus Christi 2004) ("Where the complaint is that the trial court failed to submit a particular definition or instruction, the complaining party must have presented a written request for its inclusion, tendering the proposed definition or instruction in substantially correct wording.").  Accordingly, we overrule Lyons's second issue.

## IV. Conclusion

Having overruled all of Lyons's issues, we affirm the trial court's judgment.

_____

      _____

ROGELIO VALDEZ
Chief Justice

Memorandum Opinion delivered and
filed this 25th day of August, 2009.

13